IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

JERMEL R. CLARK                                                                                           PLAINTIFF

vs.                                              No. 3:14cv33 JM

TA OPERATING, LLC
D/B/A PETRO STOPPING CENTERS                                                              DEFENDANT

## ORDER

Pending is Defendant's motion for summary judgment (Docket No. 24). Plaintiff has responded, and Defendant has replied. Also pending is Defendant's motion to exclude the declaration of Toya Clark from consideration in connection with Plaintiff's response to the motion for summary judgment (Docket No. 35). For the reasons stated below, Defendant's motion to exclude the declaration of Toya Clark is denied, Defendant's motion for summary judgment is granted as to the federal discrimination claim, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

Plaintiff worked as lube technician and then mechanic for Defendant for approximately a year until he was fired. He alleges that he was fired because he is African American, and he brought suit for violations of the Arkansas Civil Rights Act (ACRA) and 42 U.S.C. §1981 as well as for malicious prosecution. Defendant has moved for summary judgment on the basis that Plaintiff's claims under the ACRA, §1981, and malicious prosecution are barred by each claim's respective statute of limitations. Defendant also seeks summary judgment on the racial discrimination claim, arguing that Plaintiff cannot meet his burden under the McDonnell-Douglas burden shifting analysis. In addition, Defendant claims entitlement to summary judgment on Plaintiff's claim for malicious prosecution on the basis that Plaintiff cannot prove all of the required elements for that cause of action. Finally, Defendant argues that Plaintiff is

judicially estopped from bringing this action since he did not disclose it as a potential asset in his Chapter 13 bankruptcy petition.

## Background

Plaintiff applied for a job with Defendant on March 17, 2011 by filling out and signing a paper copy of Defendant's employment application, which was later entered into Defendant's computer system. The paper copy of Plaintiff's application has not been produced. The electronic form of the application contains a provision that any claims arising out of Plaintiff's employment or termination of employment must be filed no more than six months after the action that is the subject of the claim and waives any statute of limitations to the contrary. Plaintiff denies that this statute of limitation-waiver provision was part of the written application that he signed.

Plaintiff began working as a lube technician for Defendant on March 29, 2011 in the truck service department at Petro-West Memphis. Defendant had an attendance policy requiring employees to call a manager at least two hours in advance of a scheduled shift to let the manager know if they would be late or would not make the shift. If an employee knew that an absence would last more than one day, the employee was required to tell the manager how many days the employee expected to be off, or call each day until returning to work. Failure to comply with this policy would be considered job abandonment.

In his year with Defendant, Plaintiff received an unsatisfactory rating for attendance on an evaluation in October of 2011 for "four or more work schedule incidents, i.e., call-offs, late arrivals/leave early in a 180-day period;" this rating was given to him by Tyrone Hayes, the African American general manager who had hired Plaintiff. Plaintiff had also been counseled and given a written warning regarding attendance in November of 2011 by his assistant general

manager, Rico Chalmers, who is also African American; at that time he was told that failure to improve would result in "suspension or up to termination." Around January of 2012, Plaintiff was promoted from technician to mechanic by his then-manager Terrance "Chris" Tiller, who was also African American.

Sometime during Plaintiff's night shift on March 11, 2012, a Robinair Cool-Tech A/C Evap Compressor (the "AC machine") went missing from where it was last seen inside the truck service area. The only two employees who were at work at that time were Plaintiff and Tim James, a Caucasian technical service advisor. There was also truck driver on the premises during the time it appears the machine went mising. As a mechanic, Plaintiff was working in the truck service area that night while James's position had him primarily working at the front counter, though both Plaintiff and James had access to the AC machine.

In reviewing the security footage of the night in question, assistant general managers Reginald Hodges and Sharon Rounds, both of whom are African American, saw that the AC machine was present when Plaintiff began working on a the first truck of his shift and was missing after the truck pulled out. More particularly, before the first truck pulled in at 1:35 a.m., the AC machine could be seen in the far corner of Bay 1 near the overhead door, farthest from the camera. While the truck was in the service area, it blocked the view of the AC machine. The security footage shows that Plaintiff worked on the truck, and then the driver left the truck service area at 2:17 a.m. and went inside to the front counter to talk with James. As the driver was leaving the truck service area, Plaintiff opened the door to Bay 1 and was seen talking on his cell phone and looking outside the door to Bay 1. Then he is seen walking around the front of the truck. At this point both he and the AC machine are hidden from view by the truck, the door to Bay 1 is open, and Plaintiff is the only person revealed by the security footage to be in the truck

service area.  Approximately 30 seconds later, Plaintiff walks back in view and goes inside towards the service counter.  The overhead door is still raised, and nobody is in view.  Several minutes later, Plaintiff walks back into the truck service area and works on the truck.  At one point he walks around the front of the truck, and James comes out and walks over to him very briefly before walking back inside. The security footage later shows the truck driver alone in the bay for a period of time and also a period of time with nobody present in the truck service area and the overhead door still raised.  When the truck pulled out at 3:07 a.m., the AC machine is not visible in the security footage.  Hodges testified that "when the truck pulled in, the machine was there, and when [Plaintiff] opened the door, I could see a shadow, like the machine is leaving. Truck pulled out, and the machine is gone."  Nobody saw who took the AC machine.

After the shift during which the AC machine went missing, Plaintiff worked the eleven-to-seven shift on March 11-12th and another eleven-to-seven shift on March 12-13th.  He may also have worked on the 15th.[1]  It is undisputed that Plaintiff went out of town for his wife's birthday and did not work on Friday the 16th or Saturday the 17th.  Plaintiff testified that he was scheduled to be off of work on those days and had also already notified management that he would not be working on Sunday the 18th.  Assistant general manager Charles McKenzie testified that there was one shift during the week after the AC machine went missing, he couldn't remember which one, that McKenzie expected Plaintiff to be at work and didn't find out that he wouldn't be coming in until McKenzie called him and was told by Plaintiff that he was out of town.  The Employee Counseling and/or Termination Form filled out by Tiller on March 20, 2012 after he had fired Plaintiff states that (1) Plaintiff was scheduled to work the midnight shift on March 13th but he never showed up, doing a "no call no show;" (2) Plaintiff called on his

---

[1] Defendant's Statement of Undisputed Material Facts states that after Plaintiff worked his shift ending on the morning of March 13th, he went out of town for his wife's birthday.  Plaintiff states in his deposition that he worked from midnight to eight on Thursday, March 15th.  His wife's declaration also states that he worked on March 15th.

next scheduled day, March 16th, right before his shift and called out for that night; (3) Plaintiff was scheduled to work the next day on the 17th but he did another "no call no show;" (4) for these and other write-ups, Plaintiff was terminated immediately.

On March 20, 2012, which was Plaintiff's first day back at work after going out of town, Tiller called Plaintiff into his office, showed him the security footage of the night the AC machine went missing, and fired him. Plaintiff testified that Tiller did not mention his attendance as the reason for his firing. Tiller reported the theft of the AC machine to the West Memphis Police Department after talking with Tiller, and the police came to the Petro-West Memphis and met with Tiller. Plaintiff also talked with the police when they came, but he was not arrested at that time. After an interview with a detective from the WMPD, Tiller signed an Affidavit for Warrant of Arrest stating that he had reason to believe that Plaintiff committed the theft of the AC machine. Plaintiff was later arrested on this warrant after a traffic stop. The criminal proceeding against Plaintiff was ultimately *nolle prossed* on June 10, 2013.

Plaintiff filed this action on January 2, 2014 in the circuit court of Crittenden County; it was subsequently removed to this Court. On January 5, 2015, Plaintiff and his wife filed a Petition for Chapter 13 bankruptcy; the instant lawsuit was not disclosed as an asset on his schedule of property attached to his petition. On April 17, 2015, the bankruptcy court entered an order confirming his Chapter 13 plan. On May 1, 2015, Plaintiff was deposed in the instant lawsuit and when asked if he had listed this lawsuit as an asset in his bankruptcy petition, he responded, "No, I don't think I did," but that he had informed his bankruptcy attorney about the lawsuit. That same day he and his wife filed an Amended Schedule of Personal Property with the bankruptcy court and listed the instant lawsuit as having a value of $30,000.

5

### Declaration of Toya Clark

In support of his response to the motion for summary judgment, Plaintiff attached the declaration of his wife, Toya Clark. Her declaration addresses the attendance issues and the Chapter 13 bankruptcy. Defendant has moved to exclude the declaration on the basis of Fed. R. Evid. 602 and Fed R. Civ. P 56(c)(4). The Court is convinced that Ms. Clark's statements are made on personal knowledge and observations and that her testimony would be admissible at trial. Defendant's motion to exclude her declaration is denied.

### Summary Judgment Standard

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) (brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

Judicial Estoppel

Defendant argues that the doctrine of judicial estoppel should be applied to bar Plaintiff's discrimination claims. "A court invokes judicial estoppel when a party abuses the judicial forum or process by making a knowing misrepresentation to the court or perpetrating a fraud on the court." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006) (citations omitted).

There are three factors often analyzed by courts to help determine when the application of judicial estoppel is warranted: (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position; (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine,* 532 U.S. 742, 750 (2001). The Eighth Circuit has recognized that careless or inadvertent disclosures that were not intended to mislead the Court may not warrant the imposition of the doctrine, and the specific facts of each case are to be weighed carefully in making the determination. *Id.* at 1049. "In the bankruptcy context, a party may be judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements. A debtor's failure to list a claim in the "mandatory bankruptcy filings is tantamount to a representation that no such claim existed." *Stallings* at 1047 (quoting *In re Superior Crewboats, Inc.,* 374 F.3d 330, 335 (5th Cir.2004)).

The Court finds that the facts in this case warrant the imposition of the doctrine of judicial estoppel. Plaintiff failed to list his unliquidated litigation interest in this case, which was filed in January of 2014, as an asset in his bankruptcy petition, which was filed in January of 2015. He not only knew about the claim, but he was actively pursuing it. Plaintiff failed to correct the omission until after the issue was raised in his deposition in this case on May 1, 2015,

which was after the bankruptcy court had entered an order confirming his bankruptcy plan on April 17, 2015. At that time, the trial in this matter was scheduled to begin on August 31, 2015. Plaintiff amended his schedule of personal property with the bankruptcy court on the same day as his deposition. In the amended schedule he listed the value of this claim as $30,000. However, in response to Defendant's alternate request that Plaintiff's claim should be limited to the $30,000 he valued his claims at with the bankruptcy court, Plaintiff argues that the Court should not limit him to that amount because it would "unfairly limit the plaintiff's ability to be fully compensated for his pending court claims." (Docket No. 31, p. 18) Plaintiff also testified that he had informed his bankruptcy attorney of the lawsuit and thought that it was "handled through her." (Docket No. 30-1, p. 11).

The Eighth Circuit has recently affirmed that "[a] debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Jones v. Bob Evans Farms, Inc.*, No. 15-2068, 2016 WL 308659, at *3 (8th Cir. Jan. 26, 2016) (citing *Stallings* at 1048 ) (emphasis omitted) (quoting *In re Coastal Plains, Inc.,* 179 F.3d 197, 210 (5th Cir.1999)). Plaintiff had already begun proceedings to recover damages from his employer at the time he sought the protection of the bankruptcy court, and a date was set for a jury trial. The Court finds that he had knowledge of the claims and had motive to conceal his employment discrimination claim from the bankruptcy court and his creditors. *Stallings* at 1048; *Jones* at *3. The Court joins other courts in finding that Plaintiff is bound by the actions of his bankruptcy attorney, as well as by the fact that he signed the bankruptcy petition himself under penalty of perjury. *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472 (6th Cir. 2010); *Lewis v. Weyerhaeuser Co.,* 141 Fed. Appx. 420 (6th Cir. 2005); *Barger v. City of Catersville, Ga.*, 348 F.3d 1289 (11th Cir.

8

2003). For these reasons, the Court finds that Plaintiff's discrimination claim is barred by the doctrine of judicial estoppel. To make a complete record, the Court will address the remaining arguments put forth by Defendant in support of its motion for summary judgment on Plaintiff's discrimination claim.

## Contractual Limitations Period

Defendant argues that both Plaintiff's claim for racial discrimination under 42 U.S.C. §1981 and his claim for malicious prosecution are barred by the six-month limitations period agreed to by Plaintiff in his job application. It is undisputed that Plaintiff signed a paper copy of the employment application which was then entered into Defendant's computer system. In support of its motion for summary judgment, Defendant attached the declaration of Bruce Sebera who is employed in Defendant's human resources department. Sebera states that there was no version of the paper job application in March of 2011 when Plaintiff applied that did not contain the above agreement. However, when questioned about the job application during his deposition, Plaintiff stated that the version he was being shown, the print-out from the electronic copy, had some extra paper that he didn't recall signing and some comments in the "tell us about yourself" section that appeared on the electronic copy that he didn't write. The Court finds that there is a genuine dispute regarding the material fact of whether Plaintiff agreed to the six-month limitations period in his employment application with Defendant, and summary judgment on this issue is denied.

## Racial Discrimination

Since Plaintiff in this instance does not claim any direct evidence of discrimination, he can survive Defendant's motion for summary judgment by establishing an inference of unlawful discrimination through the familiar burden-shifting analysis originating in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973). The analysis begins with the employee establishing a prima facie case of discrimination, followed by the employer coming forward with a legitimate, nondiscriminatory reason for its adverse employment action. *Russell v. City of Kansas City, Missouri,* 414 F.3d 863, 866 -867 (8th Cir. 2005).  At that point, the burden shifts back to the employee to counter the employer's stated reason with sufficient proof that the employer's stated reason is merely a pretext for the unlawful discrimination.  *Id* at 868.  To successfully show a prima facie case for race discrimination, a plaintiff "must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853-54 (8th Cir. 2012) (citation omitted).

There is no dispute that Plaintiff is a member of a protected class and that he suffered an adverse employment action.  Defendant argues that Plaintiff fails to make a prima facie case of discrimination because he cannot satisfy the second and fourth prongs.  However, the Court is satisfied that Plaintiff has met his burden as to the second prong at this stage because, although he received an unsatisfactory rating for attendance on an evaluation in October of 2011 and a written warning for attendance issues in November of 2011, he was promoted in January of 2012 from position of lube technician to mechanic even after having these attendance issues.  The determination as to whether Plaintiff has made a prima facie showing of an inference of discrimination, however, is less clear.  Given the low threshold of proof required at this stage, the Court will assume, without finding, that Plaintiff has made this inference of discrimination sufficiently to make a prima facie case and address these arguments in the analysis of the showing of pretext.

Defendant next has the burden to come forward with a legitimate, nondiscriminatory reason for its termination of Plaintiff.  "This burden is not onerous." *Bone v. G4S Youth Servs., LLC,* 686 F.3d 948, 954 (8th Cir. 2012). The Court finds that Defendant has met its burden as evidenced by the prior unsatisfactory rating and warning Plaintiff had been given for his attendance issues in compilation with the evidence of his missed shifts the last week of his employment.

The final step in the analysis, then, is to determine whether Plaintiff has met his burden of showing that the employer's stated reason is merely a pretext for the unlawful discrimination. Plaintiff argues that Defendant failed to follow its own attendance policy, treated similarly-situated employees in a disparate manner, and shifted its explanation as to why it fired Plaintiff. Each of these arguments, if proven, can be used to show pretext.  *Schaffhauser v. United Parcel Service, Inc.*, 794 F.3d 899, 904 (8th Cir. 2015).   Plaintiff's "burden to show pretext 'merges with the ultimate burden of persuading the court that [he was] the victim of intentional discrimination.' " *Torgerson v. City of Rochester,* 643 F.3d 1031, 1046 (8th Cir.2011) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981)).

Plaintiff's primary argument on the issue of pretext is that Defendant shifted its explanations as to why he was terminated and that none of the reasons have any basis in fact. Analysis of this argument is connected to Plaintiff's argument that Defendant failed to follow its own attendance policy.  The separation report filled out by Tiller on March 20, 2012 states that Plaintiff was terminated for missing several shifts without proper authorization.  However, Plaintiff testified that when Tiller called him into the office and fired him, the only issue Tiller addressed with him was his alleged involvement in the theft of the AC machine, not the circumstances of his attendance history.  Plaintiff argues that Defendant's attendance policy

provided that an employee had to miss two to three shifts during the course of a week to constitute job abandonment for which an employee could be fired. While the facts are not undisputed on this point, an employer "can certainly choose how to run its business, including not to follow its own personnel policies regarding termination of an employee or handling claims of discrimination, as long as it does not unlawfully discriminate in doing so." *Haas v. Kelly Servs., Inc.,* 409 F.3d 1030, 1036 (8th Cir.2005) (internal quotation marks omitted). Defendant is standing by its position that Plaintiff was fired for unsatisfactory attendance. Given the timing of Plaintiff being terminated on the heels of being questioned about the missing AC machine and the police being called in immediately thereafter, a jury could find that Defendant did fire Plaintiff for his suspected involvement with the theft of the AC machine. However, whether Plaintiff was fired for violations of the attendance policy, for suspected theft of the AC machine, or some combination of the two, this factual dispute is not material. Plaintiff has failed to present facts that create genuine issue of material fact that his termination was in any way related to his race, regardless of the reason. All of the managers at Petro-West Memphis were African American, and Plaintiff had no conflicts with any of them, and he did not that think any of them had any kind of bias against him, including Tiller. After he was fired, another African American was hired into the same position Plaintiff had held. In addition, Tiller is the individual who made the decision to give Plaintiff a promotion and also to subsequently fire him.

      Plaintiff also argues that he received disparate treatment from a similarly-situated Caucasian employee. In support of this argument, he claims that the single other employee on duty the night the AC machine went missing, Tim James, a Caucasian, was asked fewer questions than Plaintiff was about the missing machine. Plaintiff claims that he and James were similarly situated because they both shared responsibilities on the upkeep of the bay. Defendant

denies that the two were similarly situated as they did not exchange or share job duties; James was primarily responsible for working in the lobby of the center and did not perform duties in the truck service shop. Assuming for purposes of this motion that James was asked fewer questions than Plaintiff about the missing AC machine, that alone does not create an inference of racial bias under these circumstances. As Plaintiff has not met his burden of proving that Defendant's reasons for firing him were pretextual or in any way racially motivated, Defendant's motion for summary judgment on Plaintiff's claim for racial discrimination is granted.

State Law Claims

With the granting of Defendant's motion for summary judgment on Plaintiff's federal discrimination claim, the Court declines to exercise supplemental jurisdiction over the state law claims of ACRA violations and malicious prosecution.

THEREFORE IT IS CONSIDERED, ORDERED AND ADJUGED that

1. Defendant's motion to exclude the declaration of Toya Clark (Docket No. 35) is denied;
2. Defendant's motion for summary judgment (Docket No. 24) is granted as to the federal claim; and
3. Plaintiff's state law claims for ACRA violations and malicious prosecution are dismissed.

A separate judgment will be entered on this date.

IT IS SO ORDERED this 3rd day of February, 2016.

_____
James M. Moody Jr.
United States District Judge